CARLOS CID & CÍA., DEMANDANTE Y APELADA, *v.* PORTO RICO
CONSTRUCTION CO., DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Sección 1ª., en pleito sobre resolución de venta y daños y
perjuicios.

No. 1766.—Resuelto en julio 23, 1918.

CONTRATO—GARANTÍA—AGENTE—PRINCIPAL.—De los hechos de este caso aparece
evidentemente que para evitar responsabilidad en virtud de la garantía co-
rrespondía al demandado probar claramente que estaba actuando como agente
y no como principal, pues según la evidencia parece improbable que los tér-
minos de un contrato que emana de un fabricante, no fueran expuestos más
clara y técnicamente.

ID.—ID.—Cuando un contrato garantiza que una bomba levanta mieles ven-
ciendo una presión de cuarenta pies, es de resolverse que la palabra ''presión''
(*head*) que es equivalente a poder o fuerza, se refiere a mieles y no a agua
que es la norma corriente, especialmente cuando el demandado conocía las
necesidades del demandante y se proponía remediarlas.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. J. H. Brown.*

Abogado de la apelada: *Sr. Francisco Soto Gras.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

En esta apelación se han alegado dos errores fundados
en lo siguiente: 1. Que la demandante no contrató con la
demandada. 2. Que no hubo falta de cumplimiento de la
garantía que alega la demandante.

El apelante admite que sustancialmente todos los tratos
de la parte demandante lo fueron con la citada apelante,
Porto Rico Construction Company, pero ésta sostiene que
actuaba solamente como agente de la P. H. & F. M. Roots
Co. Nos inclinamos a convenir con el apelado en que, dado
el hecho de que la persona que trató con la demandante era
agente y oficial de la demandada, le incumbía a ésta el probar
de una manera clara que la citada compañía actuaba como
agente y no como principal, pero la prueba tiende a demos-
trar por sí misma, que la Porto Rico Construction Co., actuó
en su propio interés y que ésta y no la Roots Co. fué la que
vendió la bomba en controversia a la demandante. No puede

haber duda alguna de que la demandante sabía que la deman-
dada tenía una agencia de la Roots Co., pero sin embargo la
demandante contrató con la demandada. El contrato hace
constar "que la Porto Rico Construction Co. entregará a la
demandante, etc." Aparece firmada por E. P. Chase, como
agente de la demandada. La compañía Roots no se men-
ciona en ninguna parte como tal. El pago del precio de la
bomba se verificó a la Porto Rico Construction Co. y el recibo
que se le dió al comprador procedía de dicha compañía. La
prueba del demandante es de que compró a la Porto Rico
Construction Company y, como lo hemos intimado, práctica-
mente todos los tratos y negociaciones preliminares tuvieron
lugar entre la demandante y la demandada. El hecho de
que Carlos Cid inspeccionó una bomba o bombas de la Com-
pañía Roots en la fábrica o en cualquier otro sitio, o tuvo
tratos con los fabricantes, no afecta la cuestión de quiénes
fueron definitivamente las partes contratantes. Es muy se-
mejante, como lo indica el apelado, a la compra de un auto-
móvil que puede comprarse en fábrica, pero que se vende
también por conducto de agentes, y éstos por lo general con-
tratan directamente con el cliente. Que el contrato partía
de la Porto Rico Construction Co. y no de la Roots Co. cree-
mos lo patentizan los términos del propio contrato. Parece
de lo más improbable de la prueba que en el contrato que
partiese del propio fabricante la presión o fuerza de eleva-
ción (*head*) que se "garantizaba" vencer no se hubiera ex-
presado de una manera más clara o aun más técnica, de modo
que dejase menos dudas respecto de los términos del men-
cionado contrato.

Entremos ahora a considerar el segundo motivo de error.
En la correspondencia preliminar la Roots Co., si bien ase-
guraba que la bomba serviría particularmente para el tra-
bajo de mieles, nunca dijo nada fuera de que la carga total
(*total head*) contra la cual trabajarían sus bombas era de
40. Pero en ninguna de las partes al parecer tenía noción
alguna de que la palabra "*head*" empleada en el contrato

significara ninguna otra cosa que la altura, (*height*). Las palabras esenciales a interpretar son las siguientes:

"1 bomba rotativa de baja ascensión marca Roots (Roots low lift rotary pump) con un desplazamiento de 3.35 galones de uso en los Estados Unidos por revolución, corriendo a razón de 150 revoluciones por minuto garantizada para bombear (*deliver*) 2,500 galones (de los Estados Unidos) de mieles por hora, contra una carga de succión de _____ y una fuerza de descarga (*discharge head*) de 40 pies. Longitud horizontal de descarga 1,100 pies de tubería de 8 pulgadas."

La bomba se probó en definitiva para una altura de 14 pies en combinación con una tubería de 1,037 pies con ciertos codos y cierta manera de descarga en un buque. Se ha admitido que la bomba no dió resultado. La prueba es enteramente convincente de que ambas partes pensaron y tuvieron la intención, antes de llegarse a firmar el contrato, de que la bomba serviría para llenar las necesidades de la demandante para embarcar mieles en los vapores. Sin embargo, la apelante sostiene que el contrato, habiéndose hecho por escrito, las partes están limitadas a la garantía en el mismo expresada y que la ley prohibe recurrir a una garantía implícita.

Los ingenieros o peritos de la parte apelante sostienen, conforme los hemos entendido, que la frase *discharge head* significa poder, fuerza o capacidad para bombear a cierta altura en contra de ciertas resistencias o fricciones tales como la longitud de la tubería, codos, viscosidad, temperatura y otras cualidades del líquido que se trate de bombear y quizás otras cosas. Declararon que la carga total (*total head*) dadas las condiciones en que se probó la bomba alcanzaba a 53.50 aproximadamente. Asimismo declararon que la carga total (*total head*) para bombear mieles por conducto de una tubería horizontal bajo las condiciones descritas en el contrato de 1,100 pies alcanzaba a 36 pies. En otras palabras que la bomba vendida sólo podía elevar las mieles a cuatro pies del punto de descarga, sin deducir nada por los codos y otros elementos de resistencia de la misma índole.

En ausencia de alguna prueba de que el demandante fuese un perito, a las palabras del contrato se les debe dar su significación corriente.   Puesta a prueba en este sentido la frase *discharge head* parecería significar la carga (*head*) al punto de descarga.   Y la carga (*head*) debe referirse a las mieles y no al agua, como modelo.   Decimos esto en parte porque de otro modo la introducción de las palabras ''mieles'' y ''1,100 pies'' en el contrato habrían carecido de significación alguna.   Decimos esto también porque todo contrato debe interpretarse de la manera más fuerte en contra del fabricante o sus agentes, que es la parte que redacta dicho contrato. Las partes contrataban sobre mieles después de atravesar una distancia de 1,100 pies.   Al contrato debe dársele este sentido, de lo contrario es completamente ambiguo para las partes.

Convenimos con la parte apelante que cuando existe una garantía expresa las partes no pueden recurrir a una garantía implícita.   Sin embargo, somos de opinión que a menos que el contrato tenga el sentido que pretende darle el apelado el mismo es totalmente ambiguo.   Siendo ambigua la garantía y de aquí sin sentido alguno, las mencionadas partes han debido tener la intención de que la máquina vendida fuera razonablemente adecuada para los fines que se perseguían. Es absurdo suponer que el demandante compraba o que el demandado vendía una máquina que estaba garantizada sólo para levantar las mieles a cuatro pies de altura sin deducir los codos de la tubería y otras cosas por el estilo.

Cuando se llegó a la prueba apareció con mayor claridad la intención de las partes.   Cada cual conocía los fines generales del negocio de la demandante y la primera propuesta partió de la demandada o sus agentes para vender a la demandante una bomba que sirviera para los fines de ésta.   En el curso de la correspondencia la demandada tradujo la palabra *head* por ''*altura*'' que era otra indicación que las partes esperaban que tuviese una altura (*height*) de cuarenta pies con las deducciones corrientes debidas a circuns-

tancias especiales. Existen poderosas indicaciones que la demandada se asombró tanto como la demandante cuando la bomba no funcionaba e hizo todo lo mejor que pudo para probar que la citada bomba funcionaría bajo las condiciones de prueba. Los peritos de la parte apelante demuestran que su funcionamiento era imposible, de ser 40 la carga total (*total head*) de la bomba. Luego la demandada hubiera sido culpable de mala fe si la garantía significaba lo que ahora se alega ser, de la cual mala fe la absolvemos.

Nos ha llamado la atención el hecho de que la Roots Co. hable de carga total (*total head*). Por alguna razón fué la demandada la que introdujo en el contrato las palabras mieles y "1,100" pies. Creyeron lo que la Root Co. habría sabido era de otro modo, esto es, que la bomba podía levantar las mieles a cuarenta pies del punto de descarga.

El apelante hace algunos apuntes sobre los codos, mangueras y la Y, etc. que formaban parte de la distribución el día de la prueba. Los peritos de la parte apelante declararon que la carga total (*total head*) en ese día era de 53.50 y según ellos la carga (*head*) que se describe en el contrato alcanzaba a 36. Por lo tanto las condiciones especiales montaron a la diferencia o sea 17.50. Y puesto que éstos *17.50* incluyen los 14 pies a que se trató de elevar el melado el día de la prueba, parecería si no se equivocan los peritos, que los ángulos, mangueras, etc. montan a 3½. Un hecho de alguna significación si seguimos suficientemente a los expertos. No pretendemos haber comprendido ni toda su terminología ni sus conclusiones.

El artículo 1251 del Código Civil dispone que "si alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto." A despecho de la opinión de los peritos ingenieros respecto al significado de la frase *discharge head,* técnicamente empleada, las cortes son necesariamente más peritas en la interpretación de las intenciones de las partes y nosotros estamos conformes con las conclusiones de la corte inferior.

Asimismo hubo conflicto de prueba en cuanto al sentido que debía dársele al contrato. Sin hacer hincapié sobre este punto en este caso se hace precisa la confirmación de la sentencia, a cuya conclusión hemos llegado.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.